UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Raciel Z.P., <br><br> Petitioner, <br><br> v. <br><br> Kristi Noem, Secretary, U.S. Department of Homeland Security, Department of Homeland Security, in her official capacity; Todd M. Lyons, Acting Director of Immigration and Customs Enforcement, Immigration and Customs Enforcement, in his official capacity; Peter Berg, Director, St. Paul Field Office, Immigration and Customs Enforcement, in his official capacity; Samuel J. Olson, Field Office Director of Enforcement and Removal Operations, Chicago Field Office, Immigration and Customs Enforcement, in his official capacity; and Eric Klank, Sheriff of Crow Wing County, Minnesota, custodian of detainees of the Crow County Jail, <br><br> Respondents. | Case No. 26-CV-0249 (KMM/SGE) <br><br> **REPORT AND RECOMMENDATION** |

This matter is before the Court on Petitioner Raciel Z.P's ("Mr. Z.P.")[1] Petition for Writ of Habeas Corpus ("Petition") under 28 U.S.C. § 2241. (Dkt. 1.) Mr. Z.P. alleges his re-detention violates regulatory requirements, and thus his right to due process under the Fifth Amendment. (Dkt. 1 ¶¶ 27-29.) Mr. Z.P. seeks immediate release. Respondents

---

[1] Pursuant to this District's policy in immigration cases, the Court identifies Petitioner only by her first name and last initial.

1

oppose the Petition. For the reasons outlined below, the Court recommends that the Petition be **GRANTED.**

## BACKGROUND

Mr. Z.P. is a citizen of Cuba who entered the United States on July 12, 1995, as a Cuban parolee. (Dkt. 5 ¶ 4.) On December 13, 1995, Mr. Z.P. was convicted of assault in the fifth degree and on October 9, 1997 Mr. Z.P. was convicted of criminal sexual conduct in the second degree. (Dkt. 1 ¶ 2; Dkt. 5 ¶¶ 5-6.)  Mr. Z.P. was served a Form I-862, Notice to Appear, on or around January 15, 1998. (Dkt. 5 ¶ 8.) Mr. Z.P. was ordered removed to Cuba on September 14, 1998. (Dkt. 1 ¶ 3; Dkt. 5 ¶ 8.) Mr. Z.P. was arrested and placed in removal proceedings upon his release from prison on July 3, 2000. (Dkt. 5 ¶ 10.) On August 28, 2000, Mr. Z.P. was released from immigration custody on an Order of Supervision ("OOS"). (Dkt. 5 ¶ 11.) Three years later, Mr. Z.P. was convicted for issuing a bad check and on November 3, 2003, his Order of Supervision was revoked, and he was taken into immigration custody again. (Dkt. 5 ¶¶ 12-13.) Mr. Z.P. was again released on an Order of Supervision[2] on January 24, 2005, because his removal to Cuba was not likely in the foreseeable future. (Dkt. 5 ¶ 14.)[3] Since 2005, Mr. Z.P. has attended his regularly scheduled

---

[2] Respondents have not provided the Court with either the first or second Order of Supervision.

[3] Since his release on an Order of Supervision in 2005 Mr. Z.P. has been convicted of several criminal offenses. (Dkt. 5 ¶¶ 16-21.) The Court notes that Ms. Minner's Declaration states that Mr. Z.P. was also convicted of an offense on January 22, 2004 (Dkt. 5 ¶ 15), however, this makes little sense because he would have still been in immigration custody at that time according to her Declaration. (Dkt. 5 ¶¶ 13-14.) Regardless, the factual information in these paragraphs of the Declaration, correct or not, ultimately have no bearing on the Court's analysis of the Petition, as discussed more below.

check-ins with Immigration and Customs Enforcement ("ICE"). (Dkt. 1 ¶ 4.) On the date of his last check-in, December 11, 2025, Mr. Z.P. was arrested. (Dkt. 1 ¶ 6; Dkt. 5 ¶ 22.) That same day ICE served a Notice of Revocation of Release ("Notice")[4] at 11:00 p.m. and conducted an informal interview presumably after the notice was served. (Dkt. 1 ¶ 6; Dkt. 5 ¶ 22; Dkt. 5-1.)

> The Notice provided:
>
> On July 17, 1998, you were ordered removed to Cuba by an immigration judge and you are subject to a final order of removal. On November 4, 2004, ICE released you from custody on an Order of Supervision. You have not been compliant with the terms of your release. Additionally, due to changes in circumstances, ICE will pursue new efforts to remove you to Cuba. Based on the above, and pursuant to 8 C.F.R. § 241.13, you are to remain in ICE custody at this time.

(Dkt. 5-1 at 1.)[5] Mr. Z.P. has remained detained at the Crow Wing County Jail in Brainerd, Minnesota, since his arrest. (Dkt. 1 ¶ 6.)

Mr. Z.P. filed his Petition on January 13, 2026. (Dkt. 1) A few days after the filing of Mr. Z.P.'s petition, and several weeks after his arrest, Mr. Z.P. was served with a notice of third country removal to Mexico on January 18, 2026. (Dkt. 5 ¶ 23.) Respondents have not provided this notice of third country removal to the Court but contend that ICE has "successfully removed many Cuban citizens to Mexico" in recent months. (Dkt. 5 ¶ 25.)

---

[4] As discussed more below, at the time the Notice was served on Mr. Z.P., Respondents had not yet sought a travel document from Cuba or any third country.

[5] The Court has concerns about the veracity of the Notice, specifically on the Proof of Service page which contains a different noncitizen's name and A-number scribbled out with pen, and Mr. Z.P.'s A-number handwritten in. (Dkt. 5-1 at 2.) The Court also notes that the response Mr. Z.P. provided in his interview was handwritten in Spanish, and Respondents have not submitted a translated version. (Dkt. 5-1 at 3-4.)

To date, Mr. Z.P. has not been issued a travel document, nor have Respondents heard from the Government of Cuba on the foreseeability of Mr. Z.P's removal to Cuba. (Dkt. 5 ¶ 24.)

## ANALYSIS

Federal courts have jurisdiction to order the release of a person held in the custody of the United States in violation of the "Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). The court's jurisdiction over habeas extends to a person held in immigration detention, including where "ICE fail[ed] to follow its own regulations."[6] *Saengnakhone S. v. Noem*, No. 25-CV-4775 (ECT/LIB), 2026 WL 34132, at * 3 (D. Minn. Jan. 6, 2026) (citations omitted); *see also INS v. St. Cyr*, 533 U.S. 289, 305-06 (2001).

Mr. Z.P. argues that he should be released subject to the conditions of his prior OOS because Respondents did not follow their own regulations. (Dkt. 1 ¶¶ 6, 23-25, 29.) Specifically, he argues that Respondents violated 8 C.F.R. § 241.13(i) by (1) not adequately notifying him as to why his OOS was revoked, and (2) revoking his OOS without changed circumstances rendering his removal significantly likely in the reasonably foreseeable future. (Dkt. 1 ¶¶ 23-25; Dkt. 6.) Respondents admit that Mr. Z.P.'s "removal to Cuba is unlikely to occur in the foreseeable future" and thus are "nominating" Mr. Z.P.'s case for third country removal to Mexico. (Dkt. 4 at 1.) Respondents have not addressed Mr. Z.P.'s regulatory argument, despite an additional opportunity to do so.[7] For the reasons discussed

---

[6] Respondents do not challenge this Court's jurisdiction.

[7] Respondents' original response focused solely on *Zadvydas v. Davis*, 533 U.S. 678 (2001). (*See* Dkt. 4) The Court ordered Respondents to submit a supplemental brief

4

below, the Court agrees with Mr. Z.P. that Respondents have violated their own regulations.

### I. Statutory and Regulatory Framework

"Agencies must follow their own regulations." *Saengnakhone S.,* 2026 WL 34132, at * 3 (citing *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 265–68 (1954); *Webster v. Doe*, 486 U.S. 592, 602 n.7 (1988)); *see also Mohammed H. v. Trump*, 781 F. Supp. 3d 886, 895 (D. Minn. 2025). When a noncitizen has been detained pursuant to a final order of removal, ICE is required to release the noncitizen on an OOS if there is no significant likelihood of removal in the reasonably foreseeable future. *See* 8 C.F.R. § 241.13(g)-(h); *see also Zadvydas v. Davis*, 533 U.S. 678, 699-700 (2001) ("[I]f removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute."). Here, Mr. Z.P. was released on an OOS over twenty years ago, on January 24, 2005, because ICE determined his removal to Cuba was not likely in the reasonably foreseeable future. (Dkt. 5 ¶ 14.)

Once a noncitizen is released under an OOS, as Mr. Z.P. has been, his release may be revoked in two circumstances: (1) for violations of conditions of an OOS or (2) if "on

---

addressing Mr. Z.P.'s regulatory argument under 8 C.F.R. § 241.13. (Dkt. 7.) Respondents submitted a one-and-a-half-page brief that now contends that Mr. Z.P.'s detention is not subject to 8 C.F.R. § 241.13, despite the Notice and Informal Interview form Respondents provided Mr. Z.P. specifically stating that his current custody is pursuant to 8 C.F.R. § 241.13. (Dkt. 8 at 1-2; Dkt. 5-1 at 1, 3.) Respondents have not provided legal support for their new conclusory statements that the regulations do not apply. The Court disagrees with Respondents' supplemental response and again determines that Respondents' argument applies the wrong legal framework and finds that Mr. Z.P.'s re-detention must be analyzed under 8 C.F.R. § 241.13(i). *See Saengnakhone S.*, 2026 WL 34132, * 5.

account of changed circumstances, [ICE] determines that there is a significant likelihood that the [noncitizen] may be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(i)(1)-(2).

The decision to revoke an OOS on account of changed circumstances must be based on an individualized determination that those changed circumstances render removal significantly likely in the reasonably foreseeable future. *See Kong v. United States*, 62 F.4th 608, 619-20 (1st Cir. 2023) (citing 8 C.F.R. § 241.13(i)(2)); *Roble v. Bondi*, 803 F. Supp. 3d 766, 71-72 (D. Minn. 2025); *Yee S. v. Bondi*, No. 25-CV-02782 (JMB/DLM), 2025 WL 2879479, at * 5 (D. Minn. Oct. 9, 2025). ICE should make this determination based on the following factors:

> [T]he history of the [noncitizen's] efforts to comply with the order of removal, the history of [ICE's] efforts to remove [noncitizens] to the country in question or to third countries, including the ongoing nature of [ICE's] efforts to remove this [noncitizen] and the [noncitizen's] assistance with those efforts, the reasonably foreseeable results of those efforts, and the views of the Department of State regarding the prospects for removal of [noncitizens] to the country or countries in question.

8 C.F.R. § 241.13(f); *see Sarail A. v. Bondi*, 803 F. Supp. 3d 775, 785 (D. Minn. 2025) (citing cases applying 8 C.F.R. § 241.13(f) factors); *Yee S.*, 2025 WL 2879479, at * 5 ("To make such a reasoned determination, the agency must consider[ ] factors probative of the [noncitizen's] future removal, such as the factors set out in section 241.13(f).") (cleaned up). The regulations place the burden to establish changed circumstances on ICE. *Roble*, 803 F. Supp. 3d at 772. A court reviewing ICE's decision to re-detain a noncitizen should do so "in light of the regulations instructing ICE on how it should make such a determination." *Kong*, 62 F.4th at 620.

If ICE elects to revoke an OOS, the noncitizen must "be notified of the reasons for revocation of his or her release," and ICE must "conduct an initial informal interview promptly after [the noncitizen's] return to [ICE] custody to afford the [noncitizen] an opportunity to respond to the reasons for revocation stated in the notification." 8 C.F.R. § 241.13(i)(3). The "reasons for revocation" ICE must provide in a Notice cannot be mere conclusory assertions about changed circumstances but must contain specific facts supporting ICE's decision to revoke the OOS. *Sarail A.*, 803 F. Supp. 3d at 783-84; *Roble*, 803 F. Supp. 3d at 771-72. And at the interview, the noncitizen "may submit any evidence or information that he or she believes shows there is no significant likelihood he or she be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(i)(3). ICE must then consider the contested facts and determine whether revocation of release was warranted. *Id.*

## II. Respondents' Compliance with the Regulations

The Notice provided to Mr. Z.P. informed him that "due to changes in circumstances ICE will pursue new efforts to remove [him] to Cuba" (Dkt. 5-1 at 1.)[8] In sum, the Notice

---

[8] The Notice mentions non-compliance but does not allege a violation of the OOS. (Dkt. 5-1 at 1.) Nor have Respondents alleged in briefing that any violation of Mr. Z.P.'s OOS was the basis for the revocation of his OOS. (*See* Dkt. 4; Dkt. 8.) Even if Respondents had argued that Mr. Z.P's last conviction could have supported revocation here, which they do not, the most recent conviction occurred six years ago, and it unclear whether Respondents can leverage a conviction from several years ago to justify Mr. Z.P.'s current revocation. *See Bagat, v. Andrews, et al.,* No. 1:26-CV-00346 (DJC/AC), 2026 WL 252240, at * 2 (E.D. Cal. Jan. 30, 2026) ("While it is entirely possible that these events may have been a change in circumstances supporting the revocation of Petitioner's release when they occurred, they cannot be leveraged years later to justify Petitioner's present detention.") Regardless, because Respondents do not argue that violations of the OOS are the basis for the revocation of Mr. Z.P's OOS the Court need not address it under 8 C.F.R. § 241.13(i)(1).

7

informs Mr. Z.P. that ICE "will pursue new efforts to remove you to Cuba" but provided him no information of what the "changes in circumstances" are or what "new efforts" ICE was pursuing. For example, the Notice did not state that ICE had recently sought or received travel documents from Cuba, or that ICE was seeking to remove Mr. Z.P. to a third country. The Notice merely contains conclusory assertions absent any specific facts regarding changed circumstances. *Sarail A.,* 803 F. Supp. 3d at 783-84; *Roble*, 803 F. Supp. 3d at 771-72.

Thus, ICE's alleged "changes in circumstances" being that it was pursuing new efforts to remove Mr. Z.P. to Cuba, without more, fails to provide specific facts explaining the "reasons for revocation" that must be stated in the Notice. 8 C.F.R. § 241.13(i)(3). Moreover, ICE's Notice *here* fails to identify any action that ICE has taken to seek a travel document, which makes it distinguishable from other cases in this District finding that the notices satisfied the adequate notification requirement. *See, e.g.*, *Berchie v. Bondi et al.*, 25-CV-3197, Dkt. 12 at 6 (D. Minn. Sept. 3, 2025) (finding ICE's Notice detailing that noncitizen's "case will be reviewed by the Government of Ghana for issuance of a travel document" satisfied the regulatory requirement)*; Vang v. Bondi et al.*, 25-cv-2836, (LMP/JFD), Dkt. 17 at 7 (D. Minn. August 11, 2025) (finding ICE's Notice that it was "in the process of procuring a travel document for [noncitizen] from Laos" satisfied the regulation's requirement).

Because the Notice did not contain specific facts constituting "reasons for revocations" it deprived Mr. Z.P. of an opportunity to meaningfully respond in his interview. "The essence of due process is notice and an opportunity to respond." *Roble*,

8

803 F. Supp. 3d at 772. The "purpose of the interview…is to allow the petitioner to respond to reasons already given —without those reasons, the petitioner has no way to know what evidence or information is responsive." *Sarail A.,* 803 F. Supp. 3d at 782-83. ICE's Notice gave a conclusory allegation of changes in circumstances, but it did not contain reasons supported by specific facts as required by the regulation. Moreover, Respondents point out that Mr. Z.P. "fails to address third country removal." (Dkt. 4 at 11.) However, the Notice informed Mr. Z.P. that ICE "will pursue new efforts to remove you to Cuba," it did not inform Mr. Z.P. that ICE was pursuing third country removal. (Dkt. 5-1 at 1.) Mr. Z.P. could not respond to third country removal because that was not a reason given in the Notice. *Sarail A.,* 803 F. Supp. 3d at 782-83; *Roble* 803 F. Supp. 3d at 772 ("But Roble cannot be expected to "respond to the reasons for revocation stated in the notification" if the notification does not actually *state* any reasons for revocation. Not only does this scenario border on the Kafkaesque; it is also contrary to law."). In fact, Respondents did not inform Mr. Z.P. of the possibility of third country removal until January 18, 2026, nearly a week after he filed his Petition and 38 days after his arrest. (Dkt. 5 ¶ 23.) Similarly, Respondents did not provide this Court with that notice of third country removal.

  The record is devoid of any indication that, on account of changes in circumstances, Mr. Z.P.'s removal is likely to occur in the reasonably foreseeable future. The Notice served on Mr. Z.P. stated that there were "changes in circumstances" and that "ICE will pursue new efforts to remove you to Cuba." (Dkt. 5-1 at 1.) These bare statements do not inform the Court as to whether there is a "significant likelihood" that Mr. Z.P. "may be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(i)(2). In fact, there is no

9

evidence that ICE considered the 8 C.F.R. § 241.13(f) factors *before* issuing the Notice and re-detaining Mr. Z.P. Rather the evidence submitted by ICE shows that it did not consider the § 241.13(f) factors in revoking Mr. Z.P.'s release until after he was re-detained. For example, the Notice itself references only that ICE "will pursue new efforts" to remove Mr. Z.P., which "reflects a future possibility but not a present changed circumstance." *Lecky v. Bondi, et al.*, No. 2:25-CV-02637 (TLF), 2026 WL 266066, at * 7 (W.D. Wash. Feb. 2, 2026) (discussing Notice with language that ICE "intends to pursue" removal).

Now, several weeks after Mr. Z.P.'s detention and after he filed this Petition, Respondents contend that they are "nominating" his case for third country removal to Mexico. (Dkt. 4 at 1, 4; Dkt. 5 ¶ 24.) Notably, it appears that Respondents had not nominated Mr. Z.P. for removal to Mexico before his re-detention because they did not serve a Notice of Third Country Removal on Mr. Z.P. until January 18, 2026. (Dkt. 5 ¶ 23.) And Respondents have submitted no evidence that they have yet nominated Mr. Z.P. for removal, despite opportunity to do so. Nominating Mr. Z.P for removal to Mexico is the only changed circumstances that Respondents point to in support of their assertion there is a significant likelihood of removal in the reasonably foreseeable future. (*See* Dkt. 4; Dkt. 5 ¶ 25.) This argument falls "woefully short." *Roble* 803 F. Supp. 3d at 773. The fact that Respondents are nominating Mr. Z.P. for third country removal tells the Court nothing about the history of efforts to remove noncitizens to Mexico that are similarly situated to Mr. Z.P. and the reasonably foreseeable results of these removal efforts.

Lastly, the Declaration provided that "ICE has successfully removed many Cuban citizens to Mexico" in recent months is insufficient and different from others in this district

10

which at least provided the Court with information that actual travel documents had been requested and how many travel documents a particular country issued in the last twelve months. *See Vang v. Bondi et al.*, 25-CV-2836 (LMP/JFD), Dkt. 17 at 9 (D. Minn. Aug. 11, 2025) (discussing evidence submitted about number of removals); *Berchie v. Bondi et al.*, 25-CV-3197, Dkt. 12 at 3 (D. Minn. Sept. 3, 2025) (discussing evidence that travel documents had been requested). Additionally, Respondents do not contend that that they have taken any tangible steps towards removing Mr. Z.P. to Mexico, such as working with the Government of Mexico to determine whether Mexico would accept him, despite having several weeks to do so during the pendency of this case.[9] *See Yee S.*, 2025 WL 2879479, at * 5 ("Finally, the Court finds Respondents' lack of evidence of any progress even during the pendency of this case to be telling."); *Roble*, 803 F. Supp. 3d at 774 ("Not only was ICE's release-revocation notice deficient, but even after detaining [petitioner] for over a month, the Government still fails to show that his removal is any more likely today than the day he was released on his Order of Supervision.")

In conclusion, Respondents failed to give Mr. Z.P. proper notice in violation of 8 C.F.R. § 241.13(i)(3), and their actions after-the-fact fall far short of demonstrating

---

[9] The Court also notes that Respondents make various incorrect factual arguments that are clearly not related Mr. Z.P.'s proceedings. For example, Respondents argue that Mr. Z.P. has a "pending administrative appeal, which is proceeding apace," that ICE has performed "required custody reviews," and that the duration of Mr. Z.P's "detention is the result of his own litigation choices, such as several continuances" and a "pending BIA appeal." (Dkt. 4 at 13.) As far as the Court can discern, none of these factual allegations are true for Mr. Z.P. He does not have a pending appeal, he has not asked for continuances, and there is no evidence that ICE has conducted any review of Mr. Z.P.' detention. Consequently, the Court has serious concerns about the veracity of Respondents' evidence and arguments in this case.

11

changed circumstances rendering Mr. Z.P.'s removal likely in the reasonably foreseeable future under 8 C.F.R. § 241.13(i)(2). Simply put, Respondents have not followed their own regulations. *See Saengnakhone S.,* 2026 WL 34132, at * 3 (citations omitted); *Mohammed H.*, 781 F. Supp. 3d at 895.

### III.   RECOMMENDATION

Accordingly, it is **HEREBY RECOMMENDED** that:

1. Mr. Z.P.'s petition for a writ of habeas corpus (Dkt. 1) be **GRANTED** and that he be released from custody subject to the conditions in his prior order of supervision.

2. That any motion for costs and fees pursuant to the EAJA be brought within 30 days of the entry of judgment in this case.

Dated: February 13, 2026              *s/Shannon G. Elkins*
                                      SHANNON G. ELKINS
                                      United States Magistrate Judge

### NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under the circumstances of this case and Local Rule 72.2(b)(1), the parties may file and serve specific written objections to this magistrate judge's proposed findings and recommendations **within 4 days** of the filing of the Report and Recommendation. A party may respond to those objections **within 4 days** after being served a copy of the objections without regard to weekends or holidays. *See* Local Rule 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).